UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL DIVISION

CASE NO.:

SUSAN KHOURY,

       Plaintiff,

v.

MIAMI-DADE COUNTY, a political
subdivision of the State of Florida,
CARMEN MANNING, a resident
of the State of Florida, and DARIUS
MCGAHEE

       Defendants.
_____/

## COMPLAINT

Plaintiff, SUSAN KHOURY ("Ms. Khoury"), brings this Complaint against MIAMI-DADE COUNTY ("the County"), CARMEN MANNING ("Ms. Manning" or "Officer Manning"), and DARIUS MCGAHEE ("Mr. McGahee" or "Officer McGahee"), and allege the following:

### THE PARTIES, JURISDICTION, AND VENUE

At all times material to this action:

1. Ms. Khoury was a citizen of the State of Florida, and a resident of Miami-Dade County, Florida.

2. Defendant, Miami-Dade County, was a public entity incorporated under the laws of the State of Florida, and is responsible for establishing, organizing, operating and policing all areas in Miami-Dade County, Florida

3. Defendant, Carmen Manning, was a resident the State of Florida and a police officer with the Miami-Dade County Police Department.

1

4. Defendant, Darius McGahee, was a resident the State of Florida and a police officer with the Miami-Dade County Police Department.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.  Ms. Khoury also request this Court to exercise supplemental jurisdiction over her state law claim against the County pursuant to 28 U.S.C. § 1367(a) because it arises out of the same operative nucleus of facts.  Venue is proper because the events giving rise to this claim all occurred within Miami-Dade County, Florida.

## THE FACTS GIVING RISE TO THE CLAIM

**Background:**

6. At the time of this incident, Ms. Khoury lived at 6120 SW 94 Place in unincorporated Miami-Dade County.  The home had belong to the Khoury family for over 37 years.

7. Ms. Khoury's residence is essentially across the street from Glades Middle School, which is located at 9451 SW 64 Street in Miami-Dade County.

8. In approximately 2010, the Miami-Dade County School Board ("the School Board") allowed Glades Baseball Softball League, Inc. ("GBSL") to expand its baseball and softball games and practices at Glades Middle School.

9. The School Board's contract allowed GBSL to have virtually unfettered access to the baseball fields at Glades Middle School, except for school hours.

10. Since 2010, GBSL has played baseball and softball games virtually *every night of the work-week* and on the weekends.

11. Ms. Khoury's home is exactly one house over from the entrance to the baseball fields.

12. The residual effects of the baseball league are totally unacceptable for any citizen, let alone long-time homeowners and tax payers.[1]

13. For example, league participants destroyed many of the residents' lawns by parking their cars on the grass almost every night of the week.

14. GBSL participants and observers left trash in the yards, knocked down mailboxes, and ran over plants.

15. On one occasion, Ms. Khoury's neighbor had all four tires slashed because she called the police on a GBSL participant/observer for completely blocking her driveway.

16. Many of Ms. Khoury's neighbors were unable to sleep comfortably because the lights to the baseball fields illuminated their homes, and were left on until approximately 11:30 p.m. every night of the week.

17. After the league expanded its operations, Ms. Khoury and approximately 60 of her neighbors lodged complaints to the Miami-Dade Police Department, Miami-Dade County Commissioners, the Miami-Dade School Board, State Representatives, and Code Enforcement about the problems related to the School Board's contract with GBSL.

18. Ms. Khoury continuously notified the Miami-Dade Police Department and the School Board about the parking and garbage problem.

19. Even so, Ms. Khoury had only two requests to the School Board: (1) lock the gate to the field entrance adjacent to her house, which would force GBSL participants and observers

---

[1] It is important to note that before 2010, Ms. Khoury never had any problems with the baseball league or its participants.

to park in the school's parking lot; and (2) require GBSL to darken the lights at a reasonable hour.

20. In response to her request, the School Board told Ms. Khoury that its employees would lock the gates near her home, but they were inconsistent in doing so - at best.

21. When Ms. Khoury attempted to notify the School Board that the problem was on-going, the School Board shockingly sent Ms. Khoury a letter stating that one of its employees visited the field and that there is no longer a parking problem or garbage problem.

22. In order to document the continuing problem, Ms. Khoury began photographing the improperly parked cars and the unlocked gates. She would also notify law enforcement about the improperly parked cars.

23. On most occasions, the Miami-Dade Police Department would respond.

24. GBSL participants obviously did not appreciate Ms. Khoury's law and order approach to the situation. Therefore, when Ms. Khoury photographed their illegally parked cars or the unlocked gate, GBSL participant would also contact law enforcement and complain about her filming them.

25. Over the years, most law enforcement officers who worked in the area knew about the rift between the Ms. Khoury and the GBSL participants.[2]

**The Incident:**

26. On or about June 22, 2018, Anna Darden was attending her son's baseball game at Glade's Middle School.

---

[2] As explained below, Officer Manning even told Officer McGahee that, "Every year we deal with her. It's always something with her. Trust me, everybody is going to hear about this. From the major, to the Director, you will see."

27. Ms. Darden notice Ms. Khoury standing across the street on the sidewalk, which is at least 100 feet away from the spectator stands.

28. Ms. Darden saw Ms. Khoury holding her phone in her hand and accused Ms. Khoury of filming the GBSL participants (as if it illegal to film in public).

29. Ms. Darden then called the police.

30. Officer Carmen Manning and Officer Darius McGahee were riding together in a marked patrol vehicle and responded to the call.

31. Officer Manning was very familiar with Ms. Khoury and her years-long fight to correct the parking problem at Glades.

32. Officer Manning also knew that Ms. Khoury would take photographs to document the problem.

33. Officer Manning even knew where Ms. Khoury lived.

34. While in route to the area, and as heard on the body worn cameras, Officer Manning told Officer McGahee:

> She's normally on this street here, because she lives somewhere over there …. Yeah because she stays on 62 and 94 place. Yeah, I knew it. That is where she be standing. I know that she is on this street. This is her street.

35. Upon seeing Ms. Khoury, Officer William stated, "Yeah, this is her."

36. Officer Manning pulled over her patrol vehicle.

37. Both Officer Manning and Officer McGahee exited the patrol car.

38. Officer Manning stated, "Ma'am, come here. Come here."

39. Ms. Khoury stood in the same place and asked, "What is the problem?"

40. Officer Manning and Officer McGahee both approach Ms. Khoury and stood in very close proximity to her.

41. Officer Manning stated in an aggressive tone, "You know that I have made contact before, remember? Remember me? Hum?

42. Ms. Khoury remained silent.

43. Officer Manning stated, "You don't remember me? Okay."[3]

44. Ms. Khoury asked Officer Manning, "What can I do for you?"

45. Officer Manning stated, "No. Let me tell you what's going to happen… Why are you here taking pictures?!?"

46. Ms. Khoury responded, "I am not standing here taking pictures."

47. Officer Manning asked Ms. Khoury for her identification.

48. Ms. Khoury told Officer Manning that she did not have any identification on her.[4]

49. Officer Manning then stated in an aggressive tone, "You will give me some ID ma'am! You are taking pictures of what is going on over here. We have children playing."

50. Ms. Khoury, concerned about Officer Manning's aggressive tone, asked Officer Manning to call her supervisor.

51. Officer Manning told Ms. Khoury, "I will call my sergeant, but you will give me your name."

52. Ms. Khoury stated, "Susan Khoury, I live right here," and then attempted to walk away.

---

[3] The totality of Officer Manning's actions seem to indicate that, on some other occasion, she ordered Ms. Khoury to stop filming.

[4] It is important to note that Ms. Khoury was clearly dressed in "lounging around the house clothes" and that Officer Manning knew that Ms. Khoury was only a few steps from her home. Any reasonable human being should have known that Ms. Khoury's identification was likely inside of her home.

53. Both Officer Manning and Officer McGahee grabbed Ms. Khoury, and Officer Manning yelled:

> Ma'am do not go anywhere. I am speaking to you and I am trying to deal with you accordingly. As a law enforcement officer, I am allowed to ask you for your name and your date of birth when I make contact with you because I am here. Now I am not going to allow you to walk away from here.

54. Ms. Khoury responded, "Do you want to make a show for them," and pointed to the people at the baseball field.

55. During their one-sided conversation, Officer Manning consistently cut off Ms. Khoury as she tried to speak. Officer Manning would yell over Ms. Khoury, "Ma'am! Ma'am!"

56. Officer Manning also kept putting her fingers in very close proximate to Ms. Khoury's face, as if she were a child.

57. One of the final times that Officer Williams cut off Ms. Khoury and yelled, "Ma'am! Ma'am," Ms. Khoury responded back and said, "Why are you yelling at me?"

58. Officer Manning and Officer McGahee immediately grabbed Ms. Khoury's arms and quickly threw her to the ground.

59. Another female officer arrive and place her knee on top of Ms. Khoury's back.

60. Ms. Khoury asked the officers, "What are you doing to me? What am I doing wrong?" as the officers were on top of her.

61. Officer McGahee officer yelled out the standard police protocol, "stop resisting," even though Ms. Khoury was not resisting at all.

62. Officer Manning and McGahee unnecessarily twisted Ms. Khoury's arms behind her back in an awkward position.

63. Ms. Khoury repeatedly asked, "Tell me what I am doing wrong. Please tell me what I am doing wrong."

7

64. The officers handcuffed Ms. Khoury and placed her in the back seat of their patrol car.

65. As a result of the officers' actions, Ms. Khoury suffered several contusions on her eyes, nose and hands.

66. Ms. Khoury also suffered injuries to her shoulder and wrists.

67. Officer McGahee then asked Officer Manning, Have you spoken to the complainant or anything."

68. Officer Manning responded, "No, not yet." [5]

69. In other words, the officers caused this whole scene with Ms. Khoury without even speaking to the complaining party to find out what actually happened.

70. Officer McGahee told Officer Manning, "I am going to go and talk to these people across the street."

71. Officer Manning responded, "Find out who is Ms. Anna … something," meaning the GBSL participant who called the police in the first place.

72. When Officer McGahee finally spoke Ms. Darden, she explained that Ms. Khoury was "standing across the street videotaping us."

73. Ms. Darden claimed that she told Khoury to "put the phone away, you need to stop filming."

74. Ms. Darden stated that Ms. Khoury then "smile[d] and wave[d]" at her.

75. According to Darden, Ms. Khoury was "not cooperating" and everyone felt like, "Why is she videotaping us?"

---

[5] It is quite shocking that the officers would treat Ms. Khoury is such fashion without even speaking to the complaining party, especially since the only allegation was that Ms. Khoury was filming in public.

76. The officers arrested Ms. Khoury for disorderly conduct and resisting arrest without violence and then transported her to the jail.

77. After Officer Manning and McGahee booked Ms. Khoury into the jail, they returned to their patrol car and had a conversation about Ms. Khoury.

78. Officer Manning repeatedly referred to Ms. Khoury as a "coo-coo" bird.

79. Officer Manning told Officer Ms. Khoury "is always into something with those people."

80. Officer Manning stated Ms. Khoury always goes out to the park and wants to take pictures of people at the park.

81. Officer Manning knew that Ms. Khoury had constantly complained about people parking in different places.

82. Officer Manning slyly stated, "Like [the parking] is bothering her."

83. Officer Manning also knows that Ms. Khoury takes photographs to document the parking problem.

84. Officer Manning stated, "Trust me, everybody is going to hear about this. From the major, to the Director, you will see."

85. Ms. Khoury has suffered tremendously because of this incident, including pain and suffering, mental anguish, emotional distress, legal fees, which are on-going and continuous.

**COUNT I: DEPRIVATION OF CIVIL RIGHTS – FOURTH AMENDMENT VIOLATION – UNLAWFUL TERRY STOP – CARMEN MANNING**

86. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

87. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Carmen Manning.

88. Officer Manning intentionally committed an act that violated Ms. Khoury's Fourth Amendment right not to be subjected to an unreasonable or prolonged investigatory stop.

89. No reasonable police officer could have believed that Ms. Khoury was involved, or was about to become involved, in criminal activity.

90. Officer Manning's conduct caused injury to Ms. Khoury.

91. Officer Manning was acting under color of state law as a police officer when she committed such acts.

**COUNT II: DEPRIVATION OF CIVIL RIGHTS - FOURTH AMENDMENT VIOLATION - UNLAWFUL TERRY STOP – DARIUS MCGAHEE**

92. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

93. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Darius McGahee.

94. Officer McGahee intentionally committed an act that violated Ms. Khoury's Fourth Amendment right not to be subjected to an unreasonable or prolonged investigatory stop.

95. No reasonable police officer could have believed that Ms. Khoury was involved, or was about to become involved, in criminal activity.

96. Officer McGahee's conduct caused injury to Ms. Khoury.

97. Officer McGahee was acting under color of state law as a police officer when he committed such acts.

## COUNT III:  DEPRIVATION OF CIVIL RIGHTS - FOURTH AMENDMENT VIOLATION - UNLAWFUL ARREST – CARMEN MANNING

98. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

99. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Carmen Manning.

100. Officer Manning intentionally committed an act that violated Ms. Khoury's Fourth Amendment right not to be arrested or imprisoned without probable cause.

101. Officer Manning's conduct caused injury to Ms. Khoury.

102. Officer Manning was acting under color of state law as a police officer when she committed such acts.

103. No reasonable officer could have believed that probable cause existed to arrest or imprison Ms. Khoury for a criminal offense.

## COUNT IV:  DEPRIVATION OF CIVIL RIGHTS – FOURTH AMENDMENT VIOLATION - UNLAWFUL ARREST – DARIUS MCGAHEE

104. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

105. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Darius McGahee.

106. Officer McGahee intentionally committed an act that violated Ms. Khoury's Fourth Amendment right not to be arrested or imprisoned without probable cause.

107. Officer McGahee's conduct caused injury to Ms. Khoury.

108. Officer McGahee was acting under color of state law as a police officer when he committed such acts.

109. No reasonable officer could have believed that probable cause existed to arrest or imprison Ms. Khoury for a criminal offense.

### COUNT V: DEPRIVATION OF CIVIL RIGHTS – FOURTH AMENDMENT VIOLATION – EXCESSIVE FORCE – CARMEN MANNING

110. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

111. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Carmen Manning.

112. Officer Manning intentionally committed an act that violated Ms. Khoury's Fourth Amendment right to be free from excessive force during an arrest.

113. The amount of force used against Ms. Khoury by Officer Manning and other officers was unreasonable and excessive under the circumstances.

114. Officer Manning's conduct caused injury to Ms. Khoury.

115. Officer Manning was acting under color of state law as a police officer when she committed such acts.

### COUNT VI: DEPRIVATION OF CIVIL RIGHTS – FOURTH AMENDMENT VIOLATION – EXCESSIVE FORCE – DARIUS MCGAHEE

116. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

117. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Darius McGahee.

118. Officer McGahee intentionally committed an act that violated Ms. Khoury's Fourth Amendment right to be free from excessive force during an arrest.

119. The amount of force used against Ms. Khoury by Officer McGahee and other officers was unreasonable and excessive under the circumstances.

120. Officer McGahee's conduct caused injury to Ms. Khoury.

121. Officer McGahee was acting under color of state law as a police officer when he committed such acts.

### COUNT VII: DEPRIVATION OF CIVIL RIGHTS – FIRST AMENDMENT VIOLATION – RETALIATION – OFFICER CARMEN MANNING

122. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

123. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Carmen Manning.

124. Ms. Khoury has a First Amendment right to film or photograph while she is standing on a public sidewalk.

125. When Officer Manning was told that Ms. Khoury was filming from the public sidewalk, Officer Manning retaliated against her by illegally detaining and/or arresting her.

126. Ms. Khoury was engaged in an activity, *i.e.* filming or photographing in public, which is protected by the First Amendment.

127. Ms. Khoury's act of filming or photographing in public was a motivating factor in Officer Manning's decision to detain and/or arrest Ms. Khoury.

128. Officer Manning's decision to detain and/or arrest Ms. Khoury would likely deter similarly situated reasonable people from filming or photographing in public.

129. Officer Manning's conduct caused injury to Ms. Khoury.

130. Officer Manning was acting under color of state law as a police officer and intentionally detained and/or arrested Ms. Khoury.

### COUNT VIII: DEPRIVATION OF CIVIL RIGHTS – FIRST AMENDMENT VIOLATION – RETALIATION – OFFICER DARIUS MCGAHEE

131. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

132. This action is brought by Ms. Khoury pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Darius McGahee.

133. Ms. Khoury has a First Amendment right to film or photograph while she is standing on a public sidewalk.

134. When Officer McGahee was told that Ms. Khoury was filming from the public sidewalk, Officer McGahee retaliated against her by illegally detaining and/or arresting her.

135. Ms. Khoury was engaged in an activity, *i.e.* filming or photographing in public, which is protected by the First Amendment.

136. Ms. Khoury's act of filming or photographing in public was a motivating factor in Officer McGahee's decision to detain and/or arrest Ms. Khoury.

137. Officer McGahee's decision to detain and/or arrest Ms. Khoury would likely deter similarly situated reasonable people from filming or photographing in public.

138. Officer McGahee's conduct caused injury to Ms. Khoury.

139. Officer McGahee was acting under color of state law as a police officer and intentionally detained and/or arrested Ms. Khoury.

### COUNT IX: STATE LAW FALSE ARREST/IMPRISONMENT – MIAMI-DADE COUNTY, FLORIDA

140. Ms. Khoury re-alleges the allegations contained in paragraphs 1-85 of this Complaint.

141. This action is brought by Ms. Khoury against Miami-Dade County for state law false arrest and/or false imprisonment, pursuant to Miami-Dade County's waiver of sovereign immunity under Florida Statute 768.28.

142. Miami-Dade County, via Officers Manning and McGahee, unlawfully detained and deprived Ms. Khoury of her liberty.

143. Miami-Dade County, via Officers Manning and McGahee, intentionally detained Ms. Khoury under circumstances that were unreasonable and unwarranted.

144. None of Miami-Dade County's officers had probable cause to arrest Ms. Khoury.

145. Ms. Khoury suffered harm as a result.

146. Pursuant to the Miami-Dade County's waiver of sovereign immunity under Florida Statute 768.28, it is liable to Ms. Khoury for her injuries caused by Officers Manning and McGahee.

WHEREFORE, Plaintiff, Susan Khoury, demands judgment for her economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Ms. Khoury demands a jury trial of all issues so triable as of right by a jury.

DATED: May 1, 2020.

                                              Hilton Napoleon, II, Esq., FBN 17593
                                              Joseph P. Klock, Jr., Esq. FBN 155678
                                              RASCO KLOCK  PEREZ NIETO
                                              2555 Ponce de Leon Blvd., Suite 600
                                              Coral Gables, Florida 33134
                                              Telephone: 305.476.7111
                                              Facsimile: 305.675.7707

                                              *Counsel for the Plaintiff, Susan Khoury*

                                              By: /s/ *Hilton Napoleon, II*
                                                    Hilton Napoleon, II