UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

**Case Number: 20-21841-CIV-JEM**

SUSAN KHOURY,

      Plaintiff,

v.

MIAMI-DADE COUNTY, a political subdivision
of the State of Florida, CARMEN MANNING, a
resident of the State of Florida, and DARIUS
MCGAHEE,

      Defendants.

_____/

## CORRECTED ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Miami-Dade County ("County")'s Motion to

Dismiss Count IX of the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure (DE 15). The Court has carefully considered the motion, response and reply thereto,

and is otherwise fully advised. For the reasons that follow, the Motion to Dismiss is **DENIED**.

## I.    BACKGROUND

Plaintiff, Susan Khoury, lives across the street from Glades Middle School in

unincorporated Miami-Dade County. (DE 1, Compl. ¶¶ 6-7). According to the Complaint, the

school hosts a very active baseball and softball league at its home field, which operates games and

practice sessions almost every night, including weekends. (*Id*. ¶¶ 8-10). Khoury accuses league

participants of leaving garbage around the neighborhood, parking illegally, blocking access to

private residences, and destroying landscaping. (*Id*. ¶¶ 13- 15). Khoury further states that powerful

lights from the ballpark keep her up at night. (*Id*. ¶ 16). Based on these concerns, Khoury and other

neighbors, but mostly Khoury, routinely contact the Miami-Dade Police Department and the

School Board to address the situation. (*Id*. ¶¶ 17-18, 25). Khoury takes videos and photographs of purported offenders to document their conduct, who, in turn, complain to the police about Khoury's invasive tactics. (*Id*. ¶ 18). This contentious merry-go-round has made Khoury well known to most law enforcement officers in the area. (*Id*. ¶ 25).

Unfortunately, on June 22, 2018, police did not intervene in her favor. On that day, Khoury alleges that Anna Darden was attending her son's baseball game at Glades Middle School. (*Id*. ¶ 26). Darden noticed Khoury standing across the street on the sidewalk holding her phone in her hand and presumed that Khoury was filming the league participants. (*Id*. ¶¶ 27-28). Darden called the police. (*Id*. ¶ 29).

Khoury states that Officer Carmen Manning and Officer Darius McGahee responded to the call. (*Id*. ¶ 30). According to the Complaint, Officer Manning was very familiar with Khoury and her "years-long fight" to correct the parking problem at Glades Middle School. (*Id*. ¶ 31). Khoury alleges that Officer Manning also knew that Khoury would take photographs to document the problem and further knew that Khoury was a nearby resident. (*Id*. ¶¶ 32-33).

Khoury alleges that Officer Manning and Officer McGahee exited their patrol car and stated, "Ma'am, come here. Come here." (*Id*. ¶ 38). Khoury stood in place and asked, "What is the problem?" (*Id*. ¶ 39). Then both officers approached Khoury and stood in very close proximity to her. (*Id*. ¶ 40). Khoury alleges that Officer Manning stated in an aggressive tone, "You know that I have made contact before, remember? Remember me? Hum?" but Khoury remained silent. (*Id*. ¶¶ 40-42).   Then Khoury asked Officer Manning, "What can I do for you?" to which she responded "No. Let me tell you what's going to happen. Why are you here taking pictures?" (*Id*. ¶¶ 44-45).   Khoury denied taking pictures. (*Id*. ¶ 46).

Khoury contends that Officer Manning then asked her for identification but she did not have any. (*Id.* ¶¶ 47-48). Officer Manning then stated, "You will give me some ID ma'am! You are taking pictures of what is going on over here. We have children playing." (*Id.* ¶ 49). Khoury alleges that she was concerned about Officer Manning's aggressive tone and asked Officer Manning to call her supervisor. (*Id.* ¶ 50). Officer Manning agreed to call her sergeant but demanded that Khoury provide her name. (*Id.* ¶ 51). Khoury complied and attempted to walk away. (*Id.* ¶ 52). Khoury alleges that, at this time, Officer Manning and Officer McGahee grabbed Khoury, while Officer Manning yelled:

> Ma'am do not go anywhere. I am speaking to you and I am trying to deal with you accordingly. As a law enforcement officer, I am allowed to ask you for your name and your date of birth when I make contact with you because I am here. Now I am not going to allow you to walk away from here.

(*Id.* ¶ 53). Khoury responded, "Do you want to make a show for them," and pointed to the people at the baseball field. (*Id.* ¶ 54). Officer Manning repeatedly interrupted Khoury as she tried to speak and pointed her finger in Khoury's face. (*Id.* ¶¶ 56-57). Khoury states that Officer Manning and Officer McGahee immediately grabbed her arms and "quickly threw her to the ground." (*Id.* ¶ 58). Another female officer arrived to the scene and placed her knee on Khoury's back. (*Id.* ¶ 59). Khoury asked what she had done wrong while Officer McGahee accused Khoury of resisting arrest. (*Id.* ¶¶ 60-61). Khoury denies that she resisted arrest. (*Id.* ¶ 61).

Khoury claims that Officer Manning and McGahee unnecessarily twisted her arms behind her back in an awkward position during the arrest. (*Id.* ¶ 62).   The officers then handcuffed and placed Khoury in the back seat of the patrol car. (*Id.* ¶ 64). Khoury alleges that as a result of the incident she suffered several contusions on her eyes, nose and hands, and injuries to her shoulder

and wrists. (*Id*. ¶¶ 65-66). The officers arrested Khoury for disorderly conduct and resisting arrest without violence and transported her to jail. (*Id*. ¶ 76).

After booking Khoury into jail, the officers returned to their patrol car and apparently had a conversation about Khoury. (*Id*. ¶ 77). Officer Manning referred to Khoury as a "coo-coo bird" and said that Khoury "is always into something with those people." (*Id*. ¶¶ 78-79). Officer Manning said that Khoury "always goes out to the park and wants to take pictures of people at the park" and sarcastically remarked, "Like [the parking] is bothering her." (*Id*. ¶¶ 80-82). Officer Manning then predicted to Officer McGahee: "Every year we deal with her. It's always something with her. Trust me, everybody is going to hear about this. From the major, to the Director, you will see." (*Id*. ¶ 84).

Based on this incident, Khoury filed a nine-count complaint asserting claims against the officers for violations of 42 U.S.C. 1983 (Counts I-XIII) and a state law claim for false arrest/false imprisonment against Miami-Dade County (Count IX). The single question before the Court is whether Count IX is subject to dismissal on grounds of sovereign immunity. This matter is now ripe for adjudication.

## II.   <u>DISCUSSION</u>

In considering a Rule 12(b)(6) motion, a court evaluates the sufficiency of the pleading rather than the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do."   *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the

speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id*. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Furthermore, a complaint is subject to dismissal "when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1022 (11th Cir. 2001). But while questions of immunity should be resolved at the earliest stage possible, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), this directive does not alter the rule that a court must assume that the allegations in the complaint are true, and must view all facts and inferences in the light most favorable to the nonmoving party at the dismissal stage. *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). Dismissal is only appropriate "when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002).

## III.   <u>DISCUSSION</u>

The County moves to dismiss Count IX of the Complaint as legally barred by the doctrine of sovereign immunity. The doctrine of sovereign immunity provides that the County, as a political subdivision of the State of Florida, is immune from suit except in those circumstances where the State has given its consent to be sued. *Moore v. Miami-Dade Cnty*., 502 F. Supp. 2d 1224, 1234-35 (S.D. Fla. 2007) (citing *Cauley v. City of Jacksonville*, 403 So. 2d 379, 381 (Fla. 1981)). Specifically, Florida law provides:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission

was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). *See also id.* at § 768.28(2) ("state agencies and subdivisions" include "counties and municipalities").

Against this backdrop, the County argues that the allegations of misconduct against the officers in the Complaint "can only be characterized as committed in bad faith, with malicious purpose, or in a willful and wanton manner." (DE 15: 11). The Court disagrees.

The relevant authority in determining whether allegations of police misconduct are sufficiently egregious to trigger a governmental entity's statutory immunity under Florida law is *McGhee v. Volusia Cty.* 679 So. 2d 729 (Fla. 1996). In that case, a sheriff's deputy arrested the plaintiff, Morris McGhee. *Id.* at 730. During booking procedures, and while McGhee was in handcuffs, McGhee told the deputy that he was no longer welcomed at a shop owned by McGhee's father, where deputies apparently had come on occasion. *Id.* The deputy then asked if McGhee was threatening him and "lunged at McGhee, grabbed him by the throat, and began kicking McGhee with force." *Id.*

McGhee later sued the deputy and the county. The trial court granted the county's motion to dismiss based on the immunity prescribed in section 768.28(9)(a) and the Fifth District Court of Appeal affirmed, ruling that the deputy acted beyond the scope of his duties in attacking McGhee. But the Florida Supreme Court reversed, explaining that the county is "immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority." *Id.* at 733. "The fact that [the deputy] may have intentionally abused his office does not

in itself shield the sheriff from liability." *Id.* The Florida Supreme Court accordingly held that that the question of whether the deputy "acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property" should be put to the fact-finder. *Id.*

The case of *Valdes v. Miami-Dade Cty.,* 2013 WL 5429938, at *7 (S.D. Fla. Sept. 27, 2013), *aff'd*, 584 Fed. Appx. 927 (11th Cir. 2014) serves as a further guidepost in determining whether the application of the Florida sovereign immunity statute is appropriate. There, the district court denied Miami-Dade County's motion to dismiss based on sovereign immunity. *Id.*

In pertinent part, the allegations in the complaint revealed an incident on Thanksgiving Day in which an altercation occurred between the plaintiff (Valdes) and an off-duty police officer (Martinez) who arrested him several months earlier. *Valdes*, 2013 WL 5429938, at *7. Valdes stated he did not want any trouble, especially since it was Thanksgiving Day. *Id.* "Officer Martinez, however, continued telling Valdes that they should go outside to resolve the 'problem.'" *Id.* "Valdes's father also told Officer Martinez that he did not want any trouble and that if he continued to harass Valdes, he would call the police, to which Officer Martinez responded, 'I am the f[---ing] police.'" *Id.*

After the father dialed 911, the incident escalated and Valdes was arrested. *Id.* "[Officer] Martinez told Plaintiff that he was going to jail, and, as a result, would not be able to "eat any f[---ing] turkey." *Id.* Pursuant to a search incident to arrest, the arresting officers found a firearm, but plaintiff alleged that the officers "'knew for a fact Plaintiff had a license to carry a firearm,' but they nevertheless arrested Plaintiff for carrying a concealed weapon" among other (ultimately unsuccessful) charges. *Id.*

Regarding the denial of sovereign immunity with respect to this incident, the district court

reasoned that "in order to make the determination that Miami–Dade County is asking for [that the arrest "cannot be construed as anything other than . . . bad faith]," the court "would have to make inferences in its favor, rather than construing the allegations in the light most favorable to the plaintiff." *Valdes*, 2013 WL 5429938, at \*19. The court declined to do so. *See also Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1279 (S.D. Fla. 2012).

Applying these precepts here, *McGhee* and *Valdes* compel the conclusion that sovereign immunity is inappropriate. In particular, Khoury's Complaint paints a plausible picture of police officers as neighborhood peacekeepers attempting to contain a well-known belligerent and serial exaggerator. Although those efforts, as alleged, were perhaps misguided and potentially unlawful under the circumstances, that does not mandate a finding of bad faith. Indeed, the police encounter here, like *McGhee* and *Valdes*, appears to have been colored in part by prior encounters between the parties.

Although the Court agrees with the County that bad faith could be reasonably inferred from these facts, when faced with two plausible and competing inferences, the Court is required to construe the allegations in a pleading in the light most favorable to the nonmoving party at the dismissal stage. Indeed, this case hews much more closely to *McGhee* and *Valdes* than the egregious examples of brutality cited by the County, in which bad faith was conclusively established by the pleadings. *See, e.g., Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1330 (S.D. Fla. 2018) (factual allegations included "repeatedly punching the plaintiff in the face, slamming him on the hood of his car, arresting him without probable cause, and fabricating evidence"); *Alicea v. Miami-Dade County*, No. 13-21549, ECF No. 95 (S.D. Fla. Oct. 25, 2014) (Bloom, J.) (complaint alleged that officer "'violently pummeled' [the plaintiff] in the head, face and torso [which was done] without reasonable suspicion or probable cause"); *Mena v. Miami-*

*Dade County*, 2014 WL 3667806, at *2 (S.D. Fla. July 22, 2014) (complaint alleged officers' actions of "pulling Mr. Mena out of the car, throwing Mr. And Mrs. Mena, beating them, handcuffing them, and arresting them"); *Blue v. Miami-Dade Cty*., 2011 WL 2447699, at *2 (S.D. Fla. June 15, 2011) (county employee's alleged actions included "intentionally kicking a five-year-old child in the mouth because she used the restroom without his permission").

In sum, it cannot be said that the acts alleged by Khoury "are so extreme as to constitute a clearly unlawful usurpation of authority" precluding any plausible explanation short of bad faith. *McGhee*, 679 So. 2d at 733. The County's sovereign immunity claim pursuant to Fla. Stat. § 768.28(9)(a) accordingly fails.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Miami-Dade County's Motion to Dismiss (DE 15) is **DENIED**. The Motion to Stay Discovery (DE 31) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 27th day of October 2020.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE