**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 20-cv-21841-MARTINEZ/OTAZO-REYES

SUSAN KHOURY,

                Plaintiff,

v.

MIAMI-DADE COUNTY, a political
subdivision of the State of Florida,
CARMEN MANNING, a resident
of the State of Florida, and DARIUS
MCGAHEE, a resident of the State
of Florida,

              Defendants.        /

**PLAINTIFF'S APPEAL OF THE MAGISTRATE'S ORDER GRANTING
MIAMI-DADE COUNTY'S MOTION FOR AN INDEPENDENT MEDICAL
EVALUATION AND ACCESS TO PLAINTIFF'S MEDICAL RECORDS**

Pursuant to Federal Rule of Civil Procedure 72(a), 28 U.S.C. § 636(b)(1)(C), and Local

Magistrate Judge Rule 4(a)(1), Plaintiff, SUSAN KHOURY ("Plaintiff" or "Ms. Khoury"), files

this Appeal of the Magistrate's Order granting Miami-Dade County's Motion for an Independent

Medical Evaluation and Access to Plaintiff's Medical Records.  See [D.E. 66].  In support thereof,

Ms. Khoury states the following:

**MEMORANDUM OF LAW**

**I.   Facts and Procedural History.**

*Prior Baker Act Case Involving Medical Records.[1]*

      Before the events giving rise to the current claim occurred, Ms. Khoury had a long-standing

---

[1] All of the facts regarding the prior Baker Act case can be found in *Khoury v. Miami-Dade
School Board*, S.D. Fla. Case No.16-cv-20680-RNS, [D.E. 156, 157, 158, 159].

problem with the participants of a baseball league for parking on her grass, vandalizing the neighborhood, treating her neighborhood like a parking lot, and leaving trash in her neighborhood. Ms. Khoury reported the problem to the various government entities.  The government responded by telling Ms. Khoury that they had spoken to the owners of the league and the owners indicated that there was no parking or trash problem.  Ms. Khoury began taking pictures to document the problem and started sending the photographs to the government.  See Attached Exhibit "A" – Photographs of Neighborhood.

In year 2015, a participant of the baseball league called the police on Ms. Khoury for taking a photograph of an illegally parked car.  A Miami-Dade School Board Police Officer[2] arrived and refused to provide Ms. Khoury with his name.  In order to determine his identity, Ms. Khoury recorded his license plate number and vehicle number.  The school board officer rushed towards Ms. Khoury in an aggressive manner and yelled, "Why are you filming me!"  The officer manhandled Ms. Khoury to the ground and dislocated her elbow.  To cover his tracks, the school board officer subjected Ms. Khoury to a mental health evaluation pursuant to Florida's Baker Act statute.

The school board officer transported Ms. Khoury to Kendall Regional Medical Center to treat her dislocated elbow.  Kendall Regional was also supposed to evaluate Ms. Khoury to determine whether she qualified for involuntary civil commitment under Florida's Baker Act statute.  However, Kendall Regional did not have the staff to evaluate Ms. Khoury, so they transported her to Miami Behavioral Health Center.  When the doctor at Miami Behavioral evaluated Ms. Khoury, she immediately released Ms. Khoury from custody, as it was abundantly

---

[2] The baseball league operated out of Glades Middle School.

clear that Ms. Khoury did not meet the criteria for involuntary hospitalization under Florida's Baker Act statute.[3]

*Present Case.*[4]

As the Court is well aware, the present case began when two Miami-Dade County Police Officers confronted Ms. Khoury in June of 2018. A bystander at the same baseball field accused Ms. Khoury of filming in public. [D.E. 28]. One of the officers approached Ms. Khoury and asked her, "Why are you taking photographs?" [D.E. 45]. Ms. Khoury responded, "I am not standing here taking pictures." [D.E. 46]. During the incident, Ms. Khoury asked the officer, "Why are you yelling at me?" [D.E. 57]. The officers immediately placed Ms. Khoury on the ground and arrested her for disorderly conduct. [D.E. 58, 76].

Ms. Khoury filed a federal civil rights claim against the officers in their individual capacities and a state law false arrest claim against Miami-Dade County. [D.E. 1]. Ms. Khoury sought monetary damages for the incident, including pain and suffering and emotional distress.

Miami-Dade County moved for a Rule 35 independent medical evaluation. [D.E. 40]. The County also subpoenaed Ms. Khoury's medical records from the 2015 Baker Act incident. [D.E. 51]. The County claimed that Ms. Khoury placed her mental state in controversy by alleging that she suffered mental anguish and emotional distress. [D.E. 56, pg. 1]. The County also argued that it needed to determine whether Ms. Khoury's mental anguish stemmed from the 2015 incident with the school board officer or the incident in this case. [D.E. 56, pg. 6].

---

[3] As side note, based on the oral argument, it appears that the Eleventh Circuit Court of Appeals feels the same way, *i.e.* Ms. Khoury did not meet the Baker Act criteria. *See* https://www.ca11.uscourts.gov/oral-argument-recordings.

[4] Based on the number of motions that have been before the Court, Ms. Khoury believes that the Court is aware of the facts of this case and will attempt to be as brief as possible. For a full recitation of the facts, please see [D.E. 1].

Ms. Khoury objected to the Rule 35 examination because her claim for emotional distress is "garden variety." [D.E. 57, pgs. 5-7]. Ms. Khoury also filed a motion to quash the subpoena for her medical records because said records are irrelevant and protected by the psychotherapist/patient privilege. [D.E. 57, pg. 7-9]. The magistrate deferred ruling until after the defense deposed Ms. Khoury and the parties briefed the aforementioned issues. [D.E. 54].

*Ms. Khoury's Deposition.*

On November 12, 2020, the County and the individual officers deposed Ms. Khoury for seven (7) hours, although the underlying incident lasted approximately 2 minutes. See generally, [D.E. 57-1]. The defense repeatedly asked her annoying, harassing, and repetitive questions, hoping that she would have some sort of mental crisis. *Id.* Ms. Khoury prevailed. More importantly, it was clear afterwards that her claim of emotion distress was one of the garden variety, based on the case law.

Ms. Khoury stated in her deposition, "The only time my emotional distress affects me with this incident is when I have to address this incident for some reason or the other, because then I have to explain it and I have to go through the whole process, and that is a pain." *See* [D.E. 57-1, pg. 267, lines 2-6]. Ms. Khoury continued, "It's not ongoing as emotional. Am I thinking about this 24/7, no ma'am. Is it affecting me when somebody asks [me] or somebody is constantly asking me about it, yes, of course it is." *See* [D.E. 57-1, pg. 267, lines 16-19]. Ms. Khoury made it abundantly clear during her deposition that her emotional distress and mental anguish is triggered only when she has to disclose the incident to someone. *See* [D.E. 57-1, pg. 257, line 4 through pg. 270, line 14].

After allowing the parties to brief the issue, the magistrate issued the following ruling:

Plaintiff seeks to avoid an IME by characterizing her emotional distress claim as "garden variety" [D.E. 57 at 2]. Having reviewed Plaintiff's discovery responses

> and deposition testimony, the undersigned does not find this characterization to be
> accurate, so as to deprive Defendant of the IME it seeks to defend against
> Plaintiff's damages claim. The undersigned further finds that Defendant is entitled
> to obtain Plaintiff's medical records for purposes of the IME, notwithstanding
> Plaintiff's psychotherapist-patient privilege claim.

[D.E. 66].  Ms. Khoury objects to the magistrate's order for the following reasons: (1) the order

does not list any facts to support the conclusion that Ms. Khoury's emotional distress is more than

"garden variety"[5]; and (2) the order is contrary to law, as it failed to apply the relevant case law.


## II.   Standard of Review.

"When a party objects to a magistrate's non-dispositive order, the district court must

consider those objections and modify or set aside any part of the order that is clearly erroneous *or*

contrary to law." *Traylor v. Howard,* 433 F. App'x 835, 835 (11th Cir. 2011)(emphasis added).

There is an important distinction between the two standards, *i.e.* "clearly erroneous" and "contrary

to law."

The "clearly erroneous" standard evaluates whether the magistrate erred in its factual

findings.  See *Quatama Park Townhomes Owners Ass'n v. RBC Real Estate Fin., Inc.*, 365 F. Supp.

3d 1129, 1133 (D. Or. 2019)("[T]he Court will evaluate the Magistrate Judge's factual findings to

determine if any are clearly erroneous.").   The factual findings by a magistrate are "clearly

erroneous" only when the district judge forms "a strong, unyielding belief that a [factual] mistake

has been made."  *Khath v. Midland Funding, LLC*, 334 F. Supp. 3d 499, 506 (D. Mass. 2018).

The "contrary to law" standard evaluates whether the magistrate's legal conclusions are

correct.  *Quatama Park Townhomes Owners Ass'n*, 365 F. Supp. 3d at 1133. ("[T]he Court also

---

[5] Ms. Khoury objects to the magistrate's findings solely on the basis that she is unable to
determine which particular facts the magistrate relied upon.  Ms. Khoury agrees that the
discovery responses and deposition testimony are properly transcribed.

will evaluate the Magistrate Judge's legal conclusions to determine if any are contrary to law.");
see also *Bryant v. Hilst*, 136 F.R.D. 487, 488 (D. Kan. 1991)("Because the Magistrate's decision
in question involves legal rather than factual issues, the 'contrary to law' portion of the Rule 72(a)
standard is implicated.").  A magistrate's order is "contrary to law" when the magistrate fails to
apply or misapplies relevant statutes, case law or rules of procedure." *Batista v. Nissan N. Am.,
Inc.*, 2015 WL 10550409, at *1 (S.D. Fla. Dec. 8, 2015)(Scola, J.)(citation omitted); see also
*Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)("A ruling is contrary to law if the
magistrate judge has misinterpreted or misapplied applicable law.").  District Courts review *de
novo* whether a magistrate's order is "contrary to law." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d
10, 15 (1st Cir. 2010)("[F]or questions of law, there is no practical difference between review
under Rule 72(a)'s "contrary to law" standard and review under Rule 72(b)'s de novo standard.);
see also *Quatama Park Townhomes Owners Ass'n v,* 365 F. Supp. 3d at 1133.

The local rules in this District also allows "the District Judge to reconsider, *sua sponte*, any
matter determined by a Magistrate Judge under this rule." *See* S.D. Fla. Local Magistrate Judge
Rule 4(a)(1).  This rule was likely promulgated to ease the district court's concern about the
possibility that assigning a non-dispositive matter to a magistrate judge will confine his or her
power to revise the outcome.  See 12 Charles Alan Wright and Arthur R. Miller, *et al.*, *Federal
Practice and Procedure: Civil* § 3069 (3d ed. 2018) ("*Wright & Miller* ").  Additionally, it is
evident from the [Federal Magistrates] Act's legislative history that the purpose of the Act's referral
and review provisions is to define the limits of the powers which a court may allow a magistrate
to exercise, not to restrict the ultimate authority of an Article III court over a case pending before
it. *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 685 (E.D. Pa. 1986), quoted in *Wright
& Miller*, *supra*, § 3069.

### III.   Legal Analysis.

*Again*, Ms. Khoury objects to the magistrate's factual findings solely on the basis that she is unable to determine which particular facts the magistrate relied upon.  Ms. Khoury's main objection is that the magistrate's order is "contrary to law," as it failed to apply the relevant case law.

*Rule 35 Examination.*

Rule 35 of the Federal Rules of Civil Procedure permits a court to order a party to submit to a mental health evaluation, upon a showing of good cause, where a party's mental condition is in controversy.  *Schlegenhauf v. Holder*, 379 U.S. 104, 118 (1964).  Federal courts in the Southern and Middle Districts of Florida have repeatedly held that a plaintiff's "garden variety" claim of emotional distress, without more, is insufficient to find that a plaintiff has placed his or her mental condition at issue.  *See, e.g., United States v. University of Miami*, Case No. 12-cv-24513-Lenard/Simonton, 2017 WL 11220353 *4, (S.D. Fla. Dec. 21, 2017)("Plaintiff's statements in his discovery responses which contend that he suffered 'emotional distress, exhaustion, frustration, and public and private humiliation,' do not extend beyond the type of emotional injury that might be expected…); *Nathai v. Fla. Detroit Diesel–Allison, Inc.,* 268 F.R.D. 398, 400 (M.D. Fla. 2010) ("[i]t is true, a plaintiff does not put his or her mental condition in controversy simply by seeking damages based on emotional distress"); *Ali v. Wang Laboratories, Inc.,* 162 F.R.D. 165, 167–68 (M.D. Fla. 1995) ("[The] plaintiff's 'mental condition' within the meaning of Rule 35 is not necessarily placed in controversy merely because plaintiff seeks recovery for 'emotional distress.' A person with no 'mental condition' may still suffer emotional distress which is compensable."); *Robinson v. Jacksonville Shipyards,* 118 F.R.D. 525, 531 (M.D. Fla. 1988) ("Plaintiff does not place her mental condition in controversy by alleging that her psychological well being ... is seriously affected by defendant's behavior."); *Chase v. Nova Se. Univ., Inc.*, No.

11-61290-CIV, 2012 WL 1936082, at *3 (S.D. Fla. May 29, 2012)("ordinary or commonplace emotional distress" that is "simple or usual" is insufficient to compel a party to attend a Rule 35 examination.).

However, where the plaintiff alleges more than a "garden variety" claim for emotional distress stemming from the defendant's conduct, courts will order a mental examination. *See Gomez v. Lozano*, No. 09-cv-22988, 2010 WL 5014100, (S.D. Fla. December 3, 2010).  In *Gomez*, the plaintiff claimed that he suffered from anxiety as a result of a brutal police attack. *Id*. at *2. He was constantly concerned and anxious about the incident and became fearful anytime he saw a police officer or police vehicle. *Id*.  The plaintiff sought psychological treatment as a result of the incident and his psychologist advised him to seek follow-up treatment. *Id*.  The plaintiff suffered from anxiety and paranoia and was scared to leave his home. *Id*.  The court found that plaintiff's claim was well beyond a simple claim of emotional distress and that the defendant was entitled to a Rule 35 evaluation. *Id*. at *3.

Similarly, in *Person v. Lamberti*, No. 10-60335-CIV, 2010 WL 11602744, (S.D. Fla. Oct. 26, 2010), the plaintiff claimed more than simple emotional distress. Specifically, the plaintiff alleged that she suffered from work-related emotional distress, and on at least two (2) occasions, was transported from work to the hospital for medical treatment. *Id*. at *1.  The plaintiff also sought and continued to receive treatment for her work-related stress through the Employee Assistance Program. *Id*.  The plaintiff claimed that the emotional distress caused by defendants resulted in her hospitalization, and further, that she sought and continued to receive treatment for that emotional distress. *Id*. at *3.  The court held that the plaintiff's claim went well beyond a "garden variety" of emotional distress, and by making this claim, she placed her mental state at issue in the case. *See also Laney v. Hosp. Bd. of Dirs.*, No. 2:09–CV–678–FtM–29SPC, 2010 WL 2540598,

* 1, 3 (M.D. Fla. June 22, 2010) (examination ordered where plaintiff brought a claim of retaliatory termination against her employer and claimed that one year after the termination, she was still suffering from mental anguish, humiliation, and depression);

Here, Ms. Khoury only has emotional distress when she has to address this incident for some reason or another, like applying for housing or a job.  Her emotional distress is not "ongoing" and she does not think about it "24/7."   Ms. Khoury made it clear during her deposition that her emotional distress and mental anguish is triggered only when she has to disclose the incident to someone.  That is to be expected with any human being.  Accordingly, Ms. Khoury's emotional distress can only be categorized as "garden variety" and a Rule 35 evaluation is inappropriate in this case.

The magistrate's order failed to apply any of the cases listed above that are similar to Ms. Khoury's claim of emotional distress.  See *supra*, *United States v. University of Miami*, Case No. 12-cv-24513-Lenard/Simonton, 2017 WL 11220353 *4, (S.D. Fla. Dec. 21, 2017); *Nathai v. Fla. Detroit Diesel–Allison, Inc.,* 268 F.R.D. 398, 400 (M.D. Fla. 2010); *Ali v. Wang Laboratories, Inc.,* 162 F.R.D. 165, 167–68 (M.D. Fla. 1995); *Robinson v. Jacksonville Shipyards,* 118 F.R.D. 525, 531 (M.D. Fla. 1988); *Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 1936082, at *3 (S.D. Fla. May 29, 2012).  The magistrate's order also failed to explain how Ms. Khoury's claim of emotion is akin to cases like *Gomez* and *Person*.  Accordingly, the magistrate's order is "contrary to law."

It is important to pause and note that the County's only stated reason to retrieve Ms. Khoury's medical records was for the Rule 35 examination.  [D.E. 56, pg. 7].  Accordingly, if the Court finds that a Rule 35 evaluation is inappropriate, then it should also find that Ms. Khoury's medical records from Miami Behavioral and Kendall Regional are irrelevant.  However, there is

also an independent basis for the Court to protect Ms. Khoury's medical records, regardless of its

decision on the Rule 35 evaluation, *i.e.* the psychotherapist-patient privilege.

*Psychotherapist-Patient Privilege.*

       The Supreme Court held long ago that a party cannot be required to disclose psychotherapist

*communications* and *records* regarding his or her treatment.  *See Jaffee v. Redmond*, 518 U.S. 1

(1996).  In *Jaffee*, a police officer received extensive mental health counseling after she shot and

killed a man.  *Id.* at 3.  The deceased's family brought a civil rights action against the officer and

moved for disclosure of her counseling records.  *Id*. at 4.  The trial court ordered the officer to

provide her counseling records, but both the officer and her counselor refused to comply, citing the

psychotherapist-patient privilege.  *Id*. at 5.  The Seventh Circuit reversed, holding that the patient-

psychotherapist privilege applies.   The Supreme Court affirmed the Seventh Circuit's decision and

stated:

> Like the spousal and attorney-client privileges, the psychotherapist-patient
> privilege is "rooted in the imperative need for confidence and trust." *Ibid.*
> Treatment by a physician for physical ailments can often proceed successfully on
> the basis of a physical examination, objective information supplied by the patient,
> and the results of diagnostic tests. Effective psychotherapy, by contrast, depends
> upon an atmosphere of confidence and trust in which the patient is willing to
> make a frank and complete disclosure of facts, emotions, memories, and fears.
> Because of the sensitive nature of the problems for which individuals consult
> psychotherapists, disclosure of confidential communications made during
> counseling sessions may cause embarrassment or disgrace. For this reason, the
> mere possibility of disclosure may impede development of the confidential
> relationship necessary for successful treatment.

*Id.* at 10.

       Here, Ms. Khoury's medical records from Kendall Regional and Miami Behavioral

contains confidential communications and impressions when she was Baker Acted in 2015.  If

these records are disclosed, it will eviscerate society's faith in having confidential communications with mental health providers.

The County claims that Ms. Khoury's records are needed so that their expert can test the veracity of her emotional distress claim, and so that their expert can determine whether the 2015 Baker Act incident contributed to her emotional distress. Nevertheless, as Magistrate Judge Chris McAliley explained to counsel for Miami-Dade County in an unrelated case involving an identical issue, a defendant cannot waive a plaintiff's psychotherapist-patient privilege simply by suggesting that an unrelated incident is the actual cause of a plaintiff's psychological injuries. See *Harewood v. Alexander*, Case No. 16-cv-21874-Moore/McAliley, [D.E. 95], (S.D. Fla. February 16, 2017). In other words, Miami-Dade County cannot waive Ms. Khoury's psychotherapist-patient privilege by claiming that it needs to determine whether the 2016 Baker Act incident is the actual cause of her emotional distress in the present case.

The magistrate's order failed to apply any of the cases listed above. The order also failed to explain what cases were relied upon in ruling that the psychotherapist/patient privilege was inapplicable. Accordingly, the magistrate's order is "contrary to law."

Most respectfully, Plaintiff, Susan Khoury, requests that this Honorable Court sustain the objections stated herein and reverse the magistrate's order dated December 23, 2020. See [D.E. 66].

**DATED**: January 6, 2021

Respectfully Submitted,

Hilton Napoleon, II, Esq., FBN 17593
RASCO KLOCK  PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100

Facsimile: 305.476.7102

*Counsel for the Plaintiff, Susan Khoury*

By: */s/ Hilton Napoleon, II*
        Hilton Napoleon, II

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 6, 2021, that a true and correct copy of the foregoing Appeal was served electronically via the Court's CM/ECF system upon the parties who are currently on the list to receive e-mail notice/service for this case and on the parties identified in the service list below.

By:  */s/ Hilton Napoleon, II*
        Hilton Napoleon, II